1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 SHAWN TUCKER,                                Case No. 16-cv-06839-HSG

8            Plaintiff,                        **ORDER DENYING PLAINTIFF'S
                                              MOTION FOR SUMMARY JUDGMENT
9     v.                                       AND GRANTING DEFENDANT'S
                                              MOTION FOR SUMMARY JUDGMENT**
10 NANCY A. BERRYHILL,
                                              Re: Dkt. Nos. 24, 26
11           Defendant.

12          Defendant Nancy A. Berryhill is the Acting Commissioner of the Social Security

13 Administration ("SSA"). The former Acting Commissioner, Carolyn Colvin, acting in her official

14 capacity, denied Plaintiff Shawn Tucker's application for disability insurance benefits ("DIB") and

15 supplemental security income ("SSI"). *See* Dkt. No. 1 ("Compl."). Plaintiff seeks judicial review

16 of that decision. *Id.* On April 12, 2017, Defendant lodged the administrative record with the

17 Court. Dkt. No. 17 ("AR"). Plaintiff filed his motion for summary judgment on June 27, 2017,

18 Dkt. No. 24 ("Pl.'s MSJ"); Defendant filed a cross-motion for summary judgment and opposition

19 on July 26, 2017, Dkt. No. 26 ("Def.'s MSJ"); and Plaintiff filed a reply and an opposition to

20 Defendant's motion on August 15, 2017, Dkt. No. 27 ("Pl.'s Opp'n"). The Court finds that this

21 matter is appropriate for disposition without oral argument and the matter is deemed submitted.

22 *See* Civil L.R. 7-1(b). For the reasons set forth below, the Court **DENIES** Plaintiff's motion for

23 summary judgment and **GRANTS** Defendant's motion for summary judgment.

24    **I.    BACKGROUND**

25      **A.    Factual Background**

26          Plaintiff was born in 1970. AR 15. He completed high school and worked as a coach of a

27 high school football team, utility worker, shipping supervisor, server, and forklift driver. AR 34–

28 39, 351.

### 1. Plaintiff's Medical Condition

Plaintiff alleges that he was injured when he fell off embankments in 2006 and 2008. AR 469. He alleges that he has been unable to work since June 2, 2009 because of chronic pain on the right side from neck to foot, numbness in the right side of the lower back, and migraine headaches. AR 318, 469–70. Plaintiff testified that he is unable to work primarily because he "can't sit or stand very long." AR 40. Plaintiff claimed that after working "just a little bit," he has to take at least ten or fifteen minutes to sit, lie down, or stretch. *Id.*

### 2. Views of Examining Physicians

After Plaintiff's injuries in 2006 and 2008, Plaintiff filed a worker's compensation claim. AR 544–58. As part of that claim, Plaintiff was examined by agreed medical evaluator Thomas Paul Miles, M.D. in June 2011. *Id.* Dr. Miles found that Plaintiff walked with an antalgic gait favoring the right side, but had normal range of motion in his shoulders, elbows, forearms, wrists, and hands. AR 547–48. Dr. Miles opined that Plaintiff was precluded from "prolonged and repetitive gripping activities on the right side" because of his elbow pain, and precluded from "running, jumping, and squatting activities" because of a right hip condition. AR 556.

In June 2012, as part of Plaintiff's Social Security application, Farjallah Nassim Khoury, M.D. examined Plaintiff. AR 482–86. Dr. Khoury found that Plaintiff was able to walk, sit down and transition to the examination table unassisted. AR 483. Plaintiff favored his right leg when walking without a cane. *Id.* Plaintiff had normal strength, including hand grip, and normal reflexes, but decreased sensation. AR 485. Dr. Khoury opined that Plaintiff could stand and walk six to eight hours in a regular day with frequent rest breaks, sit without limitation, and use a single point cane for long distances and uneven terrain. *Id.* Dr. Khoury further opined that Plaintiff could occasionally lift twenty-five pounds, climb, balance, and stoop, and that Plaintiff could frequently lift ten pounds, kneel, crouch, and crawl. *Id.*

In July 2013, Sharon Paltin, M.D. completed a residual functional capacity questionnaire after one visit with Plaintiff. AR 15, 495–98. Dr. Paltin opined that Plaintiff had a less than sedentary functional capacity as Plaintiff could not sit or stand for more than thirty minutes at one time before needing to sit down, walk around, or lie down. AR 496–87. Further, Dr. Paltin

2

1    opined that Plaintiff could sit, stand, or walk for less than two hours total in an eight-hour

2    workday. AR 197. Plaintiff could carry up to twenty pounds occasionally, but could never carry

3    fifty pounds. *Id.* Dr. Paltin opined that Plaintiff had limitations with respect to repetitive

4    reaching, handling, or fingering because of right hand weakness. *Id.*

5                        **3.   Views of Non-Examining State-Agency Physicians**

6           In July 2012, State-agency physician S. Hanna, M.D. reviewed Plaintiff's records and

7    opined that Plaintiff could stand or walk for six hours each workday, sit for six hours each

8    workday, lift or carry twenty pounds occasionally, and lift or carry ten pounds frequently. AR 83.

9    Dr. Hanna further opined that Plaintiff should alternate sitting and standing every hour for less

10   than one minute. *Id.* Dr. Hanna stated that Plaintiff could climb ramps or stairs occasionally, but

11   never climb ladders, ropes, or scaffolds, could balance and stoop occasionally, and could kneel,

12   crouch, and crawl frequently. *Id.* Dr. Hanna indicated that Plaintiff should avoid concentrated

13   exposure to hazards such as machinery and heights. AR 84.

14          The State agency denied Plaintiff's applications. AR 100–01. Following Plaintiff's

15   request for reconsideration, State-agency physician G. Williams, M.D. reviewed Plaintiff's records

16   in February 2013 and agreed with Dr. Hanna's opinion. AR 110–11. Based on Dr. Williams's

17   opinion, the State agency again denied Plaintiff's application. AR 128–29.

18          **B.    Legal Framework of the Social Security Act**

19          To qualify for DIB or SSI, the claimant must be "disabled" as defined by the Social

20   Security Act ("Act"). Both benefit programs define disability as an individual's inability "to

21   engage in any substantial gainful activity by reason of any medically determinable physical or

22   mental impairment which can be expected to result in death or which has lasted or can be expected

23   to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A),

24   1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505; *id*. § 416.905. The SSA deems a person disabled

25   only if:

26               [H]is physical or mental impairment or impairments are of such
                 severity that he is not only unable to do his previous work but
27               cannot, considering his age, education, and work experience, engage
                 in any other kind of substantial gainful work which exists in the
28               national economy, regardless of whether such work exists in the

                                                    3

1
2
3

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

4    42 U.S.C. § 423(d)(2)(A); *id*. § 1382c(a)(3)(B).

5              **1.  Five-Step Process for Evaluating Claimant's Disability Claim**

6         When the claimant is dissatisfied with the initial and reconsidered decisions by the SSA,

7    the claimant may request a hearing in front of an administrative law judge ("ALJ").  20 C.F.R. §§

8    404.929, 416.1429.  The ALJ will issue a new decision based on the preponderance of the

9    evidence developed in the hearing record and in the file.  *Id.* §§ 404.929, 416.1429.  To determine

10   whether the claimant qualifies for disability benefits, the ALJ utilizes a five-step sequential

11   evaluation process.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

12                     a.   Step One: Substantial Gainful Work Activity.

13        At Step One, the ALJ determines whether the claimant is currently engaged in work

14   activity that is substantial and gainful.  *Id*. § 404.1520(a)(4)(i), (b); *id*. § 416.920(a)(4)(i), (b).

15   Substantial work activity "involves doing significant physical or mental activities . . . even if it is

16   done on a part-time basis" or requires "do[ing] less, get[ting] paid less, or hav[ing] less

17   responsibility than when [the claimant] worked before."  *Id*. §§ 404.1572(a), 416.972(a).  "Gainful

18   work activity is work activity that [the claimant] do[es] for pay or profit . . . whether or not a profit

19   is realized."  *Id.* §§ 404.1572(b), 416.972(b).  If the claimant is engaged in substantial gainful

20   activity, then the claimant is not disabled, regardless of any medical condition or the claimant's

21   age, education, or work experience.  *Id.* § 404.1520(a)(4)(i), (b); *id*. § 416.920(a)(4)(i), (b).

22                     b.   Step Two: Medical Severity of Impairment

23        If the claimant is not presently engaged in substantial gainful activity, then the ALJ

24   determines whether the claimant's alleged impairments are medically severe.  *Id*. §

25   404.1520(a)(4)(ii), (c); *id.* § 416.920(a)(4)(ii), (c).  If the claimant lacks "any impairment or

26   combination of impairments which significantly limits [the claimant's] physical or mental ability

27   to do basic work activities," then the impairments are not severe.  *Id.* §§ 404.1520(c), 404.1521(a),

28   416.920(c), 416.921(a).  "Basic work activities" are "the abilities and aptitudes necessary to do

4

1    most jobs," including physical functioning, sensory capacity, following instructions, use of

2    judgment, and responding appropriately to routine work situations (including supervision and

3    interactions with coworkers), and dealing with changes to work routines. *Id.* §§ 404.1521(b),

4    416.921(b). Additionally, "[u]nless [the claimant's] impairment is expected to result in death, it

5    must have lasted or must be expected to last for a continuous period of at least 12 months." *Id.* §§

6    404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). If the claimant does not meet these

7    requirements, then he is not disabled, regardless of any medical condition or the claimant's age,

8    education, or work experience. *Id.* § 404.1520(a)(4)(ii), (c); *id*. § 416.920(a)(4)(ii), (c).

9                             c.    Step Three: Listed Impairment

10         If the claimant has a severe impairment, the ALJ proceeds to Step Three and determines

11    whether the claimant's impairment, or combination of impairments, medically "meets or equals"

12    an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1 ("App. 1"). *Id*. § 404.1520(a)(4)(iii),

13    (d); *id*. § 416.920(a)(4)(iii), (d); *see also id.* §§ 404.1525, 416.925 (describing Appendix 1's

14    purpose, organization, and use). A claimant's impairment is medically equivalent to a listed

15    impairment if it is "at least equal in severity and duration to the criteria of any listed impairment."

16    *Id.* §§ 404.1526(a), 416.926(a). If the claimant's impairment meets or exceeds the requirements of

17    a listed impairment, the claimant is disabled, regardless of age, education, and work experience.

18    *Id.* § 404.1520(a)(4)(iii), (d); *id.* § 416.920(a)(4)(iii), (d).

19         The listings for Musculoskeletal impairments in Appendix 1 are arranged into seven

20    diagnostic categories, including disorders of the spine (1.04). App. 1 § 1.01. Listing 1.04 requires

21    a disorder of the spine resulting in compromise of a nerve root or the spinal cord with either

22    evidence of nerve root compression characterized by neuro-anatomic distribution of pain,

23    limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle

24    weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back,

25    positive straight-leg raising test (sitting and supine); spinal arachnoiditis, confirmed by an

26    operative note or pathology report of tissue biopsy, or by appropriate medically acceptable

27    imaging, manifested by sever burning or painful dysesthesia, resulting in the need for changes in

28    position or posture more than once every two hours; or lumbar spinal stenosis resulting in

5

1  pseudoclaudication, established by findings on appropriate medically acceptable imaging,

2  manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate

3  effectively.  App. 1 § 1.04(A)–(C).

4              d.   Step Four: Residual Functioning Capacity and Past Relevant Work

5          If the claimant does not have a listed impairment, then at Step Four, the ALJ assesses the

6  claimant's residual functional capacity ("RFC") and ability to perform past relevant work.  20

7  C.F.R. § 404.1520(a)(4)(iv), (e); *id*. § 416.920(a)(4)(iv), (e).  The ALJ first assesses all the

8  relevant medical and other evidence in the record to determine the claimant's RFC.  *Id.* §§

9  404.1520(e), 416.920(e).  The claimant's RFC gauges the most the claimant can do despite the

10  claimant's limitations.  *Id.* §§ 404.1545(a)(1), 416.945(a)(1).  Before making a determination, the

11  SSA is responsible for developing the claimant's complete medical history.  *Id.* §§ 404.1545(a)(3),

12  416.945(a)(3).

13          In the RFC assessment, the ALJ assesses the claimant's physical and mental abilities, as

14  well as other abilities affected by the claimant's impairments.  *Id.* §§ 404.1545(b)–(d),

15  416.945(b)–(d).  With respect to a claimant's physical abilities, "[a] limited ability to perform

16  certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying,

17  pushing, pulling, or other physical functions (including manipulative or postural functions, such as

18  reaching, handling, stooping or crouching), may reduce [a claimant's] ability to do past work and

19  other work."  *Id.* §§ 404.1545(b), 416.945(b).  With respect to a claimant's mental abilities, "[a]

20  limited ability to carry out certain mental activities, such as limitations in understanding,

21  remembering, and carrying out instructions, and in responding appropriately to supervision,

22  coworkers, and work pressures in a work setting, may reduce [the claimant's] ability to do past

23  work and other work."  *Id.* §§ 404.1545(c), 416.945(c).  Additionally, "[s]ome medically

24  determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision,

25  hearing or other senses, and impairment(s) which impose environmental restrictions, may cause

26  limitations and restrictions which affect other work-related abilities."  *Id.* §§ 404.1545(d),

27  416.945(d).

28          Next, the ALJ compares the claimant's RFC with the physical and mental demands of the

1  claimant's past relevant work. *Id*. §§ 404.1520(f), 416.920(f). If the ALJ determines that the

2  claimant can still perform the past relevant work, then the claimant is not disabled. *Id*. §§

3  404.1520(f), 416.920(f). "Past relevant work" is work that the claimant has done in the past 15

4  years, that qualifies as substantial gainful activity, and that has "lasted long enough for [the

5  claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). The ALJ will determine

6  whether the claimant can do her past relevant work by evaluating the claimant's testimony on

7  work performed in the past. *Id.* §§ 404.1560(b)(2), 416.960(b)(2). In addition, the ALJ may

8  evaluate the testimony of other people familiar with the claimant's past work, the opinions of a

9  vocational expert ("VE"), or other resources, such as the Department of Labor's Dictionary of

10  Occupational Titles. *Id.* §§ 404.1560(b)(2), 416.960(b)(2). If the claimant is found not capable of

11  performing past relevant work at Step Four, then the burden of proof shifts to the Commissioner of

12  the SSA ("Commissioner") to prove that the claimant is not disabled at Step Five. *See Pinto v.*

13  *Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

14  e. Step Five: Adjustment to Other Work

15  If the claimant cannot perform past relevant work, then at Step Five the ALJ determines

16  whether the claimant can adjust to other work based on the claimant's age, education, work

17  experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At Step Five, the ALJ

18  uses the RFC assessment from Step Four to determine whether the claimant can adjust to other

19  work. *Id.* §§ 404.1560(c)(1), 416.920(c)(1). If the ALJ determines that "other work exists in

20  significant numbers in the national economy that [the claimant] can do," then the ALJ will find

21  that the claimant is not disabled. *Id.* §§ 404.1560(c)(2), 416.920(c)(2). The ALJ may meet her

22  Step Five burden in two ways: "(1) the testimony of a VE or (2) by reference to the Medical–

23  Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *See Osenbrock v. Apfel*, 240 F.3d

24  1157, 1161 (9th Cir. 2001).

25  **C.  Procedural History**

26  **1.  SSA Decision**

27  On March 30, 2012, Plaintiff applied for DIB and SSI, alleging that he had been disabled

28  since June 2, 2009. AR 305–18. The SSA subsequently denied Plaintiff's applications both

7

1  initially and upon reconsideration.  AR 100–01, 128–29.  By Plaintiff's request, Administrative

2  Law Judge K. Kwon held administrative hearings on January 7, 2014 and April 21, 2015.  AR 23–

3  75.  Plaintiff testified at the hearing in April 2015, as did Malcolm Brodzinsky, an impartial VE, to

4  whom Plaintiff's representative did not object.  AR 62–74.  On August 26, 2015, the ALJ issued

5  an opinion denying Plaintiff's DIB and SSI applications.  AR 6–17.

6     At Step One, the ALJ found that Plaintiff had not engaged in any substantial gainful

7  activity since the disability onset date, such that a finding of disability was not precluded by work

8  activity.  AR 11.

9     At Step Two, the ALJ determined Plaintiff had the following severe impairment:

10  degenerative joint disease of the spine.  *Id.*  The ALJ found that Plaintiff's degenerative joint

11  disease was established by the medical evidence in the record and caused "more than a minimal

12  limitation on the claimant's ability to perform basic work activities."  AR 11–12.  The ALJ found

13  Plaintiff's alleged impairments of elbow pain and migraine headaches nonsevere.  AR 12.

14  Consequently, the ALJ determined that there was insufficient evidence indicating work-related

15  limitations based on Plaintiff's alleged elbow pain and migraine headaches.  *Id.*

16     At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination

17  of impairments that met or medically equaled the severity of one of the listed impairments in

18  Appendix 1.  *Id.*  The ALJ determined that the medical evidence of Plaintiff's back pain did not

19  reflect the severity required to meet listing 1.04: disorders of the spine.  *Id.*

20     At Step Four, the ALJ determined that Plaintiff had the RFC to perform light work as

21  defined in 20 C.F.R. 404.1567(b) and 416.967(b), subject to the following limitations:

22       [C]laimant can occasionally climb ramps and stair [sic], balance,
     stoop, kneel, crouch and crawl, but never climb ladders, ropes or
23       scaffolds.  The claimant should avoid working at heights or with
     heavy hazardous machinery as a safety precaution; no repetitive
24       manipulative tasks requiring same motions throughout the course of
     an eight-hour workday; and sit stand option every thirty minutes or
25       so to alternate positions.

26  *Id.*

27     In reaching that determination, the ALJ considered opinion evidence, as well as all

28  symptoms and the extent to which the symptoms could reasonably be accepted as consistent with

1    the objective medical evidence and other evidence.  AR 13.  The ALJ noted that she followed a

2    mandatory two-stage analysis in considering the claimant's symptoms, considering first, whether

3    Plaintiff had an underlying medically determinable physical or mental impairment; and if so, the

4    extent to which the intensity, persistence, and limiting effects of Plaintiff's symptoms limited his

5    functioning.  *Id.*

6            With respect to the first inquiry, the ALJ found that claimant's medically determinable

7    impairments could reasonably be expected to cause the alleged symptoms.  AR 14.  Based on the

8    results of Dr. Khoury's June 2012 examination and MRI exams in 2013, the ALJ found that the

9    objective medical evidence supported a light RFC due to back pain.  AR 13–14.  Though Plaintiff

10   experienced chronic back pain, the ALJ found that the medical records showed that the prescribed

11   pain medication helped to alleviate Plaintiff's pain.  AR 14.  The ALJ concluded that Plaintiff was

12   appropriately limited to light work with occasional postural activities.  *Id.*  Based on Plaintiff's

13   testimony and the clinical and laboratory findings of "some tenderness at right cubital tunnel/ulnar

14   nerve" and a slightly weaker right grip, the ALJ incorporated the limitation of "no repetitive

15   manipulative tasks requiring same motions throughout the course of an eight-hour workday."  *Id.*

16           At the second stage, the ALJ gave great weight to the opinions of the State agency

17   physicians and Dr. Khoury, and gave limited weight to the opinion of Dr. Paltin.  In doing so, the

18   ALJ determined that the medical evidence of record did not support the extent of Plaintiff's

19   subjective complaints.  AR 15.  The ALJ found that Plaintiff's statements concerning the intensity,

20   persistence, and limiting effects of his impairments were not entirely credible because they were

21   inconsistent and unsupported by the medical evidence of record.  AR 14–15.  Specifically,

22   Plaintiff's daily activities of personal care and household chores were inconsistent with his

23   complaints of disabling symptoms and impairment.  AR 14.  The ALJ gave great weight to the

24   State agency's capability finding (a light level of exertion with an alternating sit-stand option).

25   AR 14–15.  The ALJ gave great weight to that finding because it was reliable and consistent with

26   the RFC and the record as a whole.  *See id.*  The ALJ also gave great weight to Dr. Khoury's

27   opinion that Plaintiff could lift and carry twenty-five pounds occasionally and ten pounds

28   frequently with occasional postural activities, noting that Dr. Khoury's finding was consistent with

9

1    the RFC. AR 15. The ALJ gave limited weight to Dr. Paltin's opinion that Plaintiff had a less

2    than sedentary functional capacity. *Id.* The ALJ observed that Dr. Paltin rendered that opinion

3    after only one visit with Plaintiff. *Id.* In addition, the ALJ concluded that Dr. Paltin's finding was

4    not supported by the objective evidence, course of treatment, or clinical findings. *Id.*

5         Based on the testimony of the VE, the ALJ found that Plaintiff was unable to perform any

6    past relevant work as a shipping clerk, shipping supervisor, forklift driver, food server, or delivery

7    driver because the demands of each job exceeded Plaintiff's RFC. *Id.*

8         Finally, at Step Five, the ALJ found that there were jobs that existed in significant numbers

9    in the national economy that Plaintiff could perform. AR 16. The ALJ considered Plaintiff's age

10   (38 on the alleged disability onset date), education (high school), work experience, and RFC to

11   determine that Plaintiff could perform the requirements of occupations such as parking lot

12   attendant or cashier, mail clerk, ticket seller, call out operator, and food and beverage order clerk.

13   *Id.* The ALJ found that Plaintiff was capable of making a successful adjustment to other work that

14   existed in significant numbers in the national economy. AR 17. Accordingly, the ALJ ruled that

15   Plaintiff was not disabled and therefore did not qualify for DIB or SSI. *Id.*

16        On September 23, 2015, Plaintiff requested review of the ALJ's decision. AR 5. On

17   September 30, 2016, the Appeals Council denied Plaintiff's request for review, applying the laws,

18   regulations, and rulings in effect at the time of the ALJ's ruling. AR 1–3. Thus, the ALJ's

19   decision became the Commissioner's final decision regarding Plaintiff's applications. AR 1.

20        **2. Judicial Appeal**

21        On November 28, 2016, Plaintiff filed this appeal challenging Defendant's final denial of

22   disability benefits. Plaintiff's primary argument on appeal is that substantial evidence does not

23   support: (1) the ALJ's RFC determination; and (2) the ALJ's determination that Plaintiff can

24   perform jobs that exist in significant numbers in the national economy. Pl.'s MSJ at 10–12.

25   Defendant responds that the ALJ properly considered the medical evidence in determining

26   Plaintiff's RFC and properly relied on the VE's testimony in rendering her decision that Plaintiff

27   was not disabled under the Act. Def.'s MSJ at 4–9.

28

10

1    II.    STANDARD OF REVIEW

2          The Court has jurisdiction to review final decisions of the Commissioner.  *See* 42 U.S.C. §

3    405(g) ("The [district] court shall have power to enter, upon the pleadings and transcript of the

4    record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

5    Security, with or without remanding the cause for a rehearing.").  The Court may disturb the

6    Commissioner's decision to deny benefits only if the decision is either not supported by

7    substantial evidence, or is based on legal error.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

8    2005).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as

9    adequate to support a conclusion.  The evidence must be more than a mere scintilla, but may be

10   less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (internal

11   quotation marks and citations omitted).  "Where the evidence is susceptible to more than one

12   rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be

13   upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

14         The Court must consider the administrative record as a whole, weighing both the evidence

15   that supports and the evidence that detracts from the ALJ's conclusion.  *McAllister v. Sullivan*,

16   888 F.2d 599, 602 (9th Cir. 1989).  The ALJ is responsible for making determinations of

17   credibility and for resolving evidentiary ambiguities, including conflicting medical testimony.

18   *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Additionally, the Court "may not

19   reverse an ALJ's decision on account of an error that is harmless.  The burden of showing that an

20   error is harmful normally falls upon the party attacking the agency's determination." *Molina*, 674

21   F.3d at 1111 (internal quotation marks, brackets, and citations omitted).

22   III.   DISCUSSION

23         Here, the Court addresses Plaintiff and Defendant's contentions regarding the ALJ's

24   finding of non-disability.

25         A.    RFC Finding

26         Plaintiff contends that the ALJ lacked substantial evidence for her RFC determination

27   because the ALJ did not properly consider Dr. Miles's opinion regarding prolonged or repetitive

28   gripping and Dr. Khoury's opinion regarding Plaintiff's use of a cane.  Pl.'s MSJ at 11–12; Pl.'s

*United States District Court*
*Northern District of California*

11

1    Opp'n at 5.  In response, Defendant argues that the opinions of Dr. Miles and Dr. Khoury are

2    consistent with the ALJ's finding that Plaintiff is able to perform light work, but precluded from

3    all repetitive manipulative activities.  Def.'s MSJ at 5–6, 8.

4         The ALJ did not err in her consideration of Dr. Miles's opinion.  Dr. Miles is the physician

5    who examined Plaintiff in 2011 as part of Plaintiff's worker's compensation claim.  AR 544–58.

6    The ALJ properly considered Dr. Miles's opinion in light of the entire record and made an RFC

7    determination consistent with that record.  *See* AR 12–13, 32.  Furthermore, as Defendant

8    highlights, the ALJ's RFC determination was even more restrictive than Dr. Miles's opinion.  AR

9    12.  Plaintiff appears to concede this point.  *See* Pl.'s MSJ at 12 ("The ALJ was aware of the

10   limitation on repetitive motions, which is evident in his [sic] restriction in Tucker's residual

11   functional capacity."); Pl.'s Opp'n at 3 ("The Commissioner stated that the ALJ's residual

12   functional capacity was more restrictive than Dr. Miles's opinion in precluding Tucker from all

13   repetitive manipulative activities.  Tucker agrees." (internal citations omitted)).  Because the RFC

14   is supported by the medical evidence of record, including Dr. Miles's opinion, the Court upholds

15   the ALJ's determination.  *See Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to

16   more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's

17   conclusion must be upheld.").

18        Plaintiff contends that the ALJ should have relied on Dr. Miles's preclusion of prolonged

19   and repetitive gripping on the *right* side to adopt an RFC that permitted "only occasional usage of

20   the upper extremities."  Pl.'s MSJ at 11.  The Court sees no logical reason a limitation of one

21   upper extremity necessitates an RFC limitation for both upper extremities.  However, the ALJ

22   ultimately adopted an RFC limitation of "no repetitive manipulative tasks requiring same motions

23   throughout the course of an eight-hour workday" based on Plaintiff's right arm pain.  AR 14.  As

24   previously stated, that RFC limitation is at least consistent with Dr. Miles's opinion, if not even

25   more restrictive than that opinion.

26        Similarly, the ALJ did not err in evaluating opinions regarding Plaintiff's use of a cane and

27   overall mobility.  Dr. Khoury documented that Plaintiff walked with minimal instability, favoring

28   the right side, and opined that Plaintiff's use of a cane was medically necessary for "long

1    distances, and uneven terrain." AR 483, 485.  Notwithstanding these limitations, Dr. Khoury still

2    concluded that Plaintiff could lift and carry twenty-five pounds occasionally and ten pounds

3    frequently.  AR 485.  The ALJ considered Dr. Khoury's opinion regarding Plaintiff's mobility

4    when determining Plaintiff's RFC.  AR 13.  Though the ALJ's RFC did not include Plaintiff's

5    need for a cane, the ALJ's RFC prohibited Plaintiff from climbing ladders, ropes, and scaffolds,

6    and provided a sit-stand option every thirty minutes.  AR 12. The ALJ's RFC determination,

7    which significantly reduced Plaintiff's exposure to circumstances involving long distances or

8    uneven terrain, is consistent with Dr. Khoury's restrictions.  AR 12.

9            More broadly, the ALJ provided the required detailed assessment of Plaintiff's testimony

10   and the medical opinions of Plaintiff's various examining and non-examining physicians.  *See* AR

11   13–15 (according "great weight" to Dr. Williams's and Dr. Khoury's opinions); AR 15 (giving

12   limited weight to Dr. Paltin's opinion); *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008)

13   ("The ALJ must consider all medical opinion evidence.").  The ALJ determined that Dr. Paltin's

14   opinion that Plaintiff had a "less than sedentary functional capacity" was not supported by the

15   objective evidence or Plaintiff's course of treatment and clinical findings.   AR 15.  This

16   determination was a proper exercise of the ALJ's authority to make determinations of credibility.

17   *See Magallane*, 881 F.2d at 750.  Further, the ALJ found that Plaintiff's reported daily activities

18   were inconsistent with a disabling impairment, and that the medical evidence of record did not

19   entirely support Plaintiff's subjective complaints.  AR 14–15.  Based on the Court's review of the

20   ALJ's findings, the ALJ properly considered the evidence of record in determining Plaintiff's

21   RFC.  *See Tommasetti*, 533 F.3d at 1041–42.

22        **B.    Jobs Plaintiff Can Perform**

23          Plaintiff contends that the ALJ erred in relying on Malcolm Brodzinsky's testimony for her

24   finding that Plaintiff could perform a significant number of jobs.  Based on Plaintiff's RFC, Mr.

25   Brodzinsky, the impartial VE, testified that Plaintiff could perform the following jobs that exist in

26   significant numbers in the national economy: parking lot attendant or cashier, mail clerk, ticket

27   seller, call out operator, and food and beverage order clerk.  AR 68–70.  Plaintiff contends that

28   four of these jobs require frequent manipulative tasks, and that frequent manipulative tasks are

13

1    inconsistent with the ALJ's RFC limitation of "no repetitive manipulative tasks requiring same

2    motions throughout the course of an eight-hour workday." *See* Pl.'s MSJ at 12; Pl.'s Opp'n at 5.

3    Further, Plaintiff contends that the ALJ erred in relying on the VE's testimony because the expert

4    did not account for Plaintiff's use of a cane in identifying existing jobs that Plaintiff can perform.

5    Pl.'s MSJ at 12; Pl.'s Opp'n at 5–6.

6           The Court finds that the ALJ did not err in determining that the jobs identified by the VE

7    were consistent with the RFC limitation regarding manipulative tasks.  The ALJ determined that

8    Plaintiff had a RFC that prohibited "repetitive manipulative tasks requiring same motions

9    throughout the course of an eight-hour workday."  AR 12.  Though most unskilled sedentary jobs

10   may require repetitive manipulative tasks, the expert identified jobs that involved different

11   activities and did not rely on "just one motion."  AR 67–71.  Based on Plaintiff's RFC, which

12   included the option to alternate between sitting and standing every thirty minutes and the

13   proscription of repetitive manipulative activities, the VE testified that Plaintiff could perform the

14   duties of the identified jobs.  AR 68–71.  Thus, the ALJ's finding of not disabled was properly

15   predicated on the VE's testimony.

16          Additionally, Plaintiff argues that Dr. Miles's opinion should be adopted to preclude work

17   that exceeds occasional upper extremity use.  Pl.'s MSJ at 12; Pl's Opp'n at 4–5.  The Court

18   disagrees with the premise of Plaintiff's argument that the ALJ's RFC somehow contravened Dr.

19   Miles's opinion.  As discussed, the ALJ properly proposed to the VE limitations consistent with

20   Dr. Miles's opinion that Plaintiff be precluded from repetitive manipulative activities, and given a

21   sit-stand option.  Based on those limitations, the VE properly identified occupations available to a

22   person unable to perform "repetitive manipulative tasks."  *See* AR 66 (ALJ: "[T]his hypothetical

23   individual should not perform manipulative tasks all day long such as a typist, or someone who

24   packages the same thing over and over, all day long. So I'm looking for jobs where there's

25   perhaps not a lot of handling of objects period, and/or a variety of tasks in terms of manipulative

26   demands."); AR 67 (ALJ: "I want to avoid jobs where . . . something is being handled . . . over

27   and over and over again." "They're doing the same things. Literally that's the job. That's it; very

28   singular in nature. [I]n favor of jobs that . . . don't rely on just one motion . . . ."); AR 68 (VE:

1    "Fingering is frequent, but there's different activities involved." ALJ: "Okay."). Thus, the VE

2    properly accounted for the RFC's preclusion of "repetitive manipulative tasks" in his assessment

3    of available jobs that Plaintiff was capable of performing.

4    Plaintiff argues that the Court should interpret the ALJ's preclusion of "repetitive

5    manipulative tasks" to allow only occasional, and not frequent or constant, manipulative tasks.

6    Pl.'s Opp'n at 4.[1] Plaintiff's suggested definition is not consistent with the ALJ's discussion of

7    Plaintiff's RFC at the hearing. At the hearing, the ALJ did not prohibit Plaintiff from all frequent

8    manipulative tasks. *See* AR 68 (VE: "Fingering is *frequent,* but there's different activities

9    involved." ALJ: "Okay.") (emphasis added). Rather, the ALJ required that Plaintiff's work

10   include a variety of tasks "in terms of manipulative demands." *See* AR 66. Further, contrary to

11   Plaintiff's claim, the VE's testimony regarding the demands of the identified jobs is not

12   inconsistent with the *Dictionary of Occupational Titles*. Pl.'s Opp'n at 5. The entries for the

13   identified occupations do not state that those occupations require repetitive manipulative activities.

14   In summary, the VE testified consistently with the RFC, and the ALJ's subsequent reliance on the

15   VE's testimony was proper.

16   Even if Plaintiff is correct that he should be limited to only occasional manipulative tasks,

17   the ALJ's finding of not disabled is still proper. The ALJ is required to identify only one

18   occupation that exists in significant numbers to support a finding of not disabled at Step Five. 20

19   C.F.R. 404.1566(b) ("Work exists in the national economy when there is a significant number of

20   jobs (in one or more occupations) having requirements which you are able to meet with your

21   physical or mental abilities and vocational qualifications."). Here, the VE testified that a

22   hypothetical person with Plaintiff's restrictions could perform the duties of a callout operator. AR

23   69–70. The duties of a callout operator require only occasional reaching, handling, and fingering.

24   DICOT 237.367-014 (G.P.O.), 1991 WL 672186. Plaintiff at no point argues that a callout

25   operator's duties exceed occasional manipulative tasks. Pl.'s MSJ at 12; Pl.'s Opp'n at 5.

26

27   ---

28   [1] In his opposition, Plaintiff states that he seeks clarification of the term "repetitive motion." That phrase does not appear in the ALJ's decision. Rather, the ALJ uses the term "repetitive manipulative tasks." *See* AR 12; Pl.'s Opp'n at 4.

1    Finally, Plaintiff contends that the ALJ should have reconciled his use of a cane with the

2    sit-stand option of the occupations identified by the VE.  Pl.'s MSJ at 12; Pl.'s Opp'n at 5–6.  But,

3    as discussed, the ALJ properly discounted Plaintiff's use of a cane when determining the RFC that

4    formed the basis of the VE's testimony.  As a result, the ALJ properly relied on the VE's

5    testimony in concluding that Plaintiff could perform jobs that exist in significant numbers in the

6    national economy, and was therefore not disabled.

7    **IV.    CONCLUSION**

8         For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Summary Judgment

9    and **GRANTS** Defendant's Motion for Summary Judgment.  The ALJ's decision is affirmed.  The

10   Clerk is directed to enter judgment in favor of Defendant and close the case.

11        **IT IS SO ORDERED.**

12   Dated:   6/26/2018

13   

14   HAYWOOD S. GILLIAM, JR.
     United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16